IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| ANDRE T. WILLIAMS, | : | |
| | : | |
| Plaintiff, | : | |
| | : | |
| vs. | : | CIVIL ACTION 10-0611-M |
| | : | |
| MICHAEL J. ASTRUE, | : | |
| Commissioner of Social Security, | : | |
| | : | |
| Defendant. | : | |

MEMORANDUM OPINION AND ORDER

In this action under 42 U.S.C. § 1383(c)(3), Plaintiff
seeks judicial review of an adverse social security ruling which
denied a claim for Supplemental Security Income (hereinafter
*SSI*) (Docs. 1, 13).  The parties filed written consent and this
action has been referred to the undersigned Magistrate Judge to
conduct all proceedings and order the entry of judgment in
accordance with 28 U.S.C. § 636(c) and Fed.R.Civ.P. 73 (*see* Doc.
17).  Oral argument was waived in this action (Doc. 19).  Upon
consideration of the administrative record and the memoranda of
the parties, it is **ORDERED** that the decision of the Commissioner
be **REVERSED** and that this action be **REMANDED** for further
procedures not inconsistent with the orders of this Court.

1

This Court is not free to reweigh the evidence or substitute its judgment for that of the Secretary of Health and Human Services, *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983), which must be supported by substantial evidence. *Richardson v. Perales*, 402 U.S. 389, 401 (1971). The substantial evidence test requires "that the decision under review be supported by evidence sufficient to justify a reasoning mind in accepting it; it is more than a scintilla, but less than a preponderance." *Brady v. Heckler*, 724 F.2d 914, 918 (11th Cir. 1984), *quoting Jones v. Schweiker*, 551 F.Supp. 205 (D. Md. 1982).

At the time of the administrative hearing, Plaintiff was thirty-seven years old, had completed less than a high school education (Tr. 70-73, 227), and had previous work experience as a commercial or industrial cleaner (Tr. 77). In claiming benefits, Plaintiff alleges disability due to mental retardation and depression (Doc. 13 Fact Sheet).

The Plaintiff protectively filed an application for SSI on May 8, 2008 (*see* Tr. 10). Benefits were denied following a hearing by an Administrative Law Judge (ALJ) who determined that although he could not perform his past relevant work, Williams was capable of performing limited medium work jobs existing in

the national economy (Tr. 10-23).  Plaintiff requested review of the hearing decision (Tr. 6) by the Appeals Council, but it was denied (Tr. 1-5).

Plaintiff claims that the opinion of the ALJ is not supported by substantial evidence.  Specifically, Williams alleges that:  (1) The ALJ erred in giving determinative weight to the conclusions of a non-examining medical expert (hereinafter *ME*) psychologist; and (2) the ALJ failed to consider whether Plaintiff's IQ scores were medically equivalent to Listing 12.05 (Doc. 13).  Defendant has responded to—and denies—these claims (Doc. 14).  The relevant medical evidence of record follows.

On June 4, 1985, a report was completed by a School Psychologist which indicated that Williams had undergone examination because of poor academic performance; Plaintiff was not quite thirteen years old and was attending sixth-grade alternative classes (Tr. 174-75).  On the California Achievement Test, Williams was reading at a 4.6 grade level and performing math at a 4.8 grade level; his language abilities were at a 4.9 grade level while he could spell at a 4.1 grade level.  On the WISC-R, Plaintiff had a verbal IQ score of 80 while his performance IQ score was 70, placing him in the borderline

intellectual functioning level range of intelligence.  Results

from the Wide Range Achievement Test showed that Williams was

reading at the beginning third-grade level, spelling at the

beginning fifth-grade level, and performing arithmetic at the

ending third-grade level.  The Bender Gestalt Visual Motor Test

results suggested a perceptual motor developmental age of a

person between the ages of eight years, six months and eight

years, eleven months.

On February 27, 1991, Dr. Harold J. Fuller examined

Plaintiff and noted that he rarely made eye contact and appeared

to be painfully shy; Williams admitted to being "a little

depressed" (Tr. 237; *see generally* Tr. 236-38).  Plaintiff

admitted suicidal ideation, though he had no current plans to

hurt himself; he was alert and oriented.  Insight was good and

intelligence was estimated to be low average.  Fuller's

diagnosis was severe depression, perhaps with psychotic

features.

On January 26, 2005, Psychologist Annie Formwalt examined

Williams who told her he could not work because of depression;

his affect was normal and appropriate to content of thought and

conversation (Tr. 240-42).  He did not appear anxious and was of

euthymic mood; he was oriented in four spheres.  Thought

processes were grossly intact as there were no loose

associations, tangential, or circumstantial thinking; Williams

had poor insight and understanding of himself.  Judgment was

poor and estimated intelligence was average.  Formwalt's

diagnostic impression was dysthymic disorder; it was the

Psychologist's impression that he would have a favorable

response to treatment, including psychotherapy, within six-to-

twelve months.

On July 20, 2008, Psychologist J. M. Jackson examined

Williams who reported that he had been depressed for a long

time; Plaintiff's mood and affect were appropriate and he did

not seem anxious (Tr. 245-48).  He was oriented to person, time,

and place; there were no signs of confusion, loose associations,

tangential, or circumstantial thinking.  There were no

hallucinations, delusions, or other distortions of thinking or

preoccupation; he denied suicidal or homicidal ideation.

Williams had limited judgment and little insight into himself

and his condition.  Jackson provided no diagnosis, finding that

Plaintiff was only superficially cooperative and unmotivated to

provide accurate, detailed information.

On December 14, 2009, Psychologist John W. Davis examined

Williams who reported problems of depression, nervousness, and

arthritis (Tr. 284-291); Davis noted that Plaintiff "showed a good degree of cooperation" (Tr. 284). Williams had "some anxiety and depression about himself but [did] not have the capacity for a full range of emotional qualities;" "emotional responses [were] appropriate to the thought, content, and situation of [the] evaluation" (Tr. 285). His mood was generally depressed; he was oriented in three spheres and had no loose associations, tangential, circumstantial thinking, or confusion. Judgment and insight were fair. Plaintiff underwent testing and was cooperative, but did not put forth his best effort so the results were not felt to be reliable or valid. On the WAIS-R, Williams scored a full scale IQ of 67, which would place him in the mild mental retardation range of intelligence. Davis's overall diagnostic impression was malingering and the prognosis was guarded. It was the Psychologist's opinion that Plaintiff was moderately limited in his ability to understand, remember, carry out, and make judgments on complex instructions.

On January 14, 2010, Psychologist Jennifer Jackson again examined Williams and found him oriented in three spheres with no signs of confusion, loose associations, tangential, or circumstantial thinking; he had limited insight into himself and his condition (Tr. 292-98). Plaintiff underwent testing,

putting forth good effort, which the examiner felt produced

reliable, valid, results.  On the WAIS-III, Williams had a

verbal IQ score of 71, a performance IQ score of 72, and a full

scale IQ score of 69, placing him in the mildly retarded range

of intelligence.  On the Beck Depression Inventory-II, results

indicated severe depression.  Plaintiff underwent two objective

tests used to measure effort and exaggeration of impairment/

symptoms; one test indicated less than optimal effort while the

other indicated that Williams put forth a valid effort without

any evidence of malingering.  The Psychologist's diagnostic

impression was depressive disorder and mild mental retardation.

Jackson completed a mental residual functional capacity form

which indicated that Plaintiff had marked deficiencies of

concentration, persistence, or pace resulting in frequent

failure to complete tasks in a timely manner and that he was

moderately limited in the following abilities:  to respond to

customary work pressures; to understand, carry out, and remember

instructions in a work setting; and perform repetitive tasks in

a work setting.

At the evidentiary hearing, Psychologist Doug McKeown was

called as an ME who testified, by telephone, that school records

indicated that Plaintiff suffered from borderline intellectual

functioning; Williams, did, however, get his GED (Tr. 51-61).

McKeown further summarized the medical evidence provided by Dr.

Fuller, Psychologists Formwalt, Jackson, and Davis.  It was the

Psychologist's opinion that Plaintiff could not be evaluated

under Listing 12.05C because Williams's mental retardation had

not been established by the time he was twenty-two years of age;

he also discounted disability under Listing 12.04 for depression

because Plaintiff had not had regular ongoing treatment (Tr.

53).  McKeown discounted Jackson's opinion of marked impairments

for concentration, persistence, and pace (Tr. 54).  When

questioned by Williams's attorney, the Psychologist admitted

that Davis had noted that the MMPI profile showed depression and

that those results were considered valid (Tr. 56-57).  McKeown

also stated that Jackson administered the WAIS-III, an older

scale than the WAIS-IV given by Davis; he volunteered the

testimony that Jackson had probably used the older test because

Williams had undergone testing with the newer test model just a

month earlier.  In any event, McKeown would dismiss the results

Jackson got on the WAIS-III as inaccurate (Tr. 58).  The

Psychologist also stated that the Beck Inventory, given by

Jackson, was not really a diagnostic tool and did not establish

depression in and of itself (Tr. 59).  After further

8

questioning, the ME stated that he did not dispute the full scale IQ score of 69, but that it did "not establish mental retardation prior to the age of 22" (Tr. 61).

In her decision, the ALJ summarized the evidence and found that Plaintiff suffered from the following severe impairments: dysthymic disorder, mild depression, borderline intellectual functioning, and obesity (Tr. 12). The ALJ found that Williams did not meet Listing 12.05 because "the evidence fails to establish mental retardation prior to age 22" (Tr. 14). In assessing the evidence, the ALJ gave significant weight to the opinions of Psychologist McKeown, great weight to the opinions of Psychologist Davis, and little weight to Dr. Jackson's opinions (Tr. 20-21). The ALJ also found that Williams's assertions of limitation were not credible to the extent alleged (Tr. 19). This concludes the relevant evidence of record.

Plaintiff has claimed that the ALJ erred in failing to consider whether Plaintiff's IQ scores were medically equivalent to Listing 12.05. The introductory notes to Section 12.05 state that "[m]ental retardation refers to a significantly subaverage general intellectual functioning with deficits in adaptive behavior initially manifested during the development period; *i.e.*, the evidence demonstrates or supports onset of the

impairment before age 22."  20 C.F.R. Part 404, Subpart P,

Appendix 1, Listing 12.05 (2010).  Subsection C requires "[a]

valid verbal, performance, or full scale IQ of 60 through 70 and

a physical or other mental impairment imposing an additional and

significant work-related limitation of function."  20 C.F.R.

Part 404, Subpart P, Appendix 1, Listing 12.05C (2010).

The Court notes that when Plaintiff was in the sixth grade,

he had a performance IQ score of 70 on the WISC-R (Tr. 174-75).

Even though McKeown and the ALJ refer to this score as only

borderline intellectual functioning, as did the school, it

clearly meets the Listing requirement of an IQ score of 60

through 70.

School records also specifically state that Williams was

taking alternative classes in the sixth grade (Tr. 174-75).  The

Court notes that although the regulations require that Plaintiff

demonstrate that he suffered "deficits in adaptive behavior"

before he turned twenty-two, 20 C.F.R. Part 404, Subpart P,

Appendix 1, Listing 12.05 (2010), the Eleventh Circuit Court of

Appeals, in *Hodges v. Barnhart*, 276 F.3d 1265, 1266 (11th Cir.

2001), has held "that there is a presumption that mental

retardation is a condition that remains constant throughout

life."  The *Hodges* Court further held "that a claimant need not

present evidence that she manifested deficits in adaptive

functioning prior to the age of twenty-two, when she presented

evidence of low IQ test results after the age of twenty-two."

*Hodges*, 276 F.3d at 1266.

Respondent has argued that *Hodges* is inapplicable here

because, in *Hodges*, there was no IQ testing for the claimant

before she turned twenty-two while, in this action, there are IQ

scores from when Williams was in the sixth grade (Doc. 14, p.

13).  Respondent further asserts that *Hodges* is based on the

reasoning of a prior case, *Lowery v. Sullivan*, 979 F.2d 835, 837

(11th Cir. 1992), which pre-dated revisions to this section of

the regulations (Doc. 14, p. 13 n.7).

The Court notes that Respondent offers no citations

demonstrating that *Hodges* is not good law.  That being the case,

the Court understands *Hodges* to instruct the Court to find that

Williams has satisfied the requirement of proving that he

suffered deficits in adaptive functioning prior to the age of

twenty-two.  The Court further notes that even though the ME and

the ALJ discounted the full scale IQ score of 69 Plaintiff

obtained on the WISC-III, the score provides further support

that this decision is correct.

The final requirement to meet Listing 12.05C is for

Plaintiff to demonstrate "a physical or other mental impairment imposing an additional and significant work-related limitation of function."  The ALJ found that Plaintiff suffered from the following severe impairments:  dysthymic disorder, mild depression, borderline intellectual functioning, and obesity (Tr. 12).

The Court notes that the Eleventh Circuit Court of Appeals has held that for purposes of § 12.05C the second prong requirement is met once there is a finding that the claimant has an additional severe impairment because the requirement of "significant work-related limitation of function" "involves something more than 'minimal' but less than 'severe.'" *Edwards by Edwards v. Heckler*, 755 F.2d 1513, 1515 (11th Cir. 1985).  The *Edwards* Court specifically held that "[o]nce a claimant is found to have a 'severe impairment' within the meaning of § 404.1520(c), he is deemed disabled (he must also meet the durational requirement), and the analysis comes to an end." *Edwards*, 755 F.2d at 1515.

The Court has reviewed the record and finds evidence which suggests that Plaintiff has satisfied the requirements of Listing 12.05C.  While the Court has reviewed the record carefully and realizes that there is evidence at odds with this

conclusion, the Court, nevertheless, finds that the ALJ's decision is not supported by substantial evidence as Williams has satisfied the requirements of Listing 12.05C.

Therefore, it is **ORDERED** that the action be **REVERSED** and **REMANDED** to the Social Security Administration for further administrative proceedings consistent with this opinion. Furthermore, it is **ORDERED** that a final judgment be entered ordering remand in this action pursuant to sentence four of 42 U.S.C. § 405(g). *See Melkonyan v. Sullivan*, 501 U.S. 89 (1991). For further procedures not inconsistent with this order, see *Shalala v. Schaefer*, 509 U.S. 292 (1993).

DONE this 27th day of May, 2011.

                              s/BERT W. MILLING, JR.
                              UNITED STATES MAGISTRATE JUDGE